[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] CORRECTED MEMORANDUM OF DECISION
This is an action seeking the dissolution of a twenty-two-year marriage on the ground of irretrievable breakdown. The complaint was filed by the plaintiff husband on March 23, 2000. On May 8, 2000, the defendant wife filed a counter claim in which she also seeks a dissolution of the marriage on the ground of irretrievable breakdown.
A trial was held on November 6 and 7, 2001. Both parties were present and were represented by counsel. Several exhibits were introduced into evidence and the court heard from four witnesses: the plaintiff, the defendant, William Levy, and William Pfeiffer. After reviewing and weighing the testimony and evidence produced, and having carefully assessed the credibility of the witnesses, the court finds the following to have been proven.
The plaintiff and the defendant, whose prior name was Katherine Ann Staiger, intermarried on September 8, 1979, in South Windsor, Connecticut. The parties resided continuously in the State of Connecticut for more than twelve months prior to the date of the complaint. There are two minor children who are issue of this marriage. Benjamin Sarnoski was born on June 5, 1987, and Ethan Sarnoski was born on September 28, 1991. No state or a public agency has contributed to the support of either party or the children, and all statutory stays have expired. The court finds that it has jurisdiction over the parties and the marriage.
The plaintiff is 49 years old and the defendant is 48 years of age. Both parties are currently in good health. The parties met in 1997 and were married in 1979. During the early years of the marriage both parties were working and going to school. The husband was employed as a police officer for the Town of South Windsor, Connecticut. The wife was employed in a local art gallery and was attending Manchester Community College. They lived in a house located in South Windsor which the husband had purchased prior to the marriage. The defendant subsequently obtained an Associates Degree from Manchester Community College and then transferred to Central Connecticut State College where she earned a Bachelor of Arts degree in psychology. The plaintiff earned a Masters Degree in Public Administration.
Initially, children were not considered to be an essential part of the marriage by the defendant. She was content with her relationship with her husband as well as with her job and educational pursuits. She enjoyed working and going to college. Both parties were in agreement that if and when they were to have children the wife would no longer work outside of the home. That was the wife's precondition to having children. She felt strongly that raising her children and taking care of the home and the family should be a full time job. CT Page 16026
In 1982 the husband, with the support of his wife, enrolled in law school. They both felt that this was a smart career move. He was able to rearrange his employment schedule so that he could go to school full time during the day and continue to work full time for the South Windsor Police Department evenings. He graduated from the University of Connecticut School of Law in 1985. Upon his graduation from law school the husband, again with the support of his wife, sold the house in South Windsor and entered active duty as a lawyer in the United States Navy Judge Advocate General Corps. The defendant indicated that, while she was not enthusiastic about military service, she thought it might be interesting and she was willing to support his decision if it made him happy.
The plaintiff was initially stationed in Charleston, South Carolina for about two years. During that time, the couple purchased a house and the defendant obtained a job in the education department of a museum in Charleston, South Carolina. She also enrolled in a graduate degree program in psychology at the Citadel. Their first child was born in 1987 while the parties were living in South Carolina.
In 1987 the plaintiff was offered the opportunity to be stationed on an aircraft carrier. It was considered to be an excellent career opportunity and he accepted, again with the support of his wife. The family sold the house in South Carolina and moved to Philadelphia, Pennsylvania where they lived on base housing for six months. The ship was then deployed to San Diego, California resulting in a family move to that location where they purchased another house.
During the next two years the plaintiff remained stationed on the aircraft carrier and was often at sea resulting in long absences from his wife and child. The defendant remained at home with her child and continued to be supportive of her husband by participating in base activities that would benefit her husband's career. For example, she served as the president of the Officer's Wives Association while in San Diego. However, she was becoming increasingly unhappy with the fact that her husband was often away and that he was essentially becoming a stranger to his son. She acknowledges that this is a common problem for military families.
In 1989 the plaintiffs duty assignment was scheduled to be changed to Washington, D.C. They investigated the cost of living in or near Washington, D.C. and decided it was too expensive to live there. Additionally, it was not an assignment that was appealing to the plaintiff. This, together with the defendant's expressed desire that they leave the military, resulted in the plaintiff resigning from active duty. The family returned to Connecticut in early 1990. They purchased a CT Page 16027 house in the Town of Hebron and the plaintiff began employment as an Assistant Attorney General with the State of Connecticut where he remains employed. He also joined the naval reserve Judge Advocate General Corps after returning to Connecticut and remains active in that activity at this time.
The couple's second child, Ethan, was born in 1991. The defendant remained in the home as a full time mother and homemaker until Ethan entered kindergarten. At that time she obtained a part time job as an administrative assistant with the Town of Hebron Department of Social Services. She currently works 26 hours per week and has been actively encouraging the town to increase her hours. She has been able to arrange her work hours so as to be home when the children are home.
Both parties agree that there were no major problems with their marriage until 1997 when their communications and intimacy significantly began to wane. Both parties accuse each other of becoming physically and communicatively distant from the other and of increasingly shunning physical intimacy. There have been few instances of physical intimacy between the parties since 1998.
Sometime during 1998 the plaintiff established an Internet relationship with a woman living in Utah. The testimony of both parties indicates that the plaintiff spends considerable time communicating with the woman both via the internet and on the telephone. The court finds the defendant's testimony concerning the frequency of the contacts between her husband and this woman to be credible. There is no credible evidence that the plaintiff has ever met this woman face to face, but it is clear to the court that by 1999 his interaction with her evolved into a significant emotional relationship. They have exchanged gifts with each other and the plaintiff plans to meet her after the divorce proceedings are concluded.
On or about May 29, 1999, the plaintiff told the defendant that they either had to fix the marriage or get a divorce. The defendant asked that they see a marriage counselor and the plaintiff agreed. There were four meetings with a marriage counselor William Pfeiffer, during the Summer of 1999, but these sessions did not result in any apparent changes in attitude or position by either party.
In June 1999, the defendant met with William Levy who was a friend and had been her psychology professor at Manchester Community College. She had maintained a friendship with Levy over the years and she wanted to discuss the state of her marriage with him. The defendant met with Levy on at least eight and as many as eighteen occasions over the summer. These meetings were in Levy's home and lasted from ten minutes to about thirty minutes. It is clear to the court that these meetings fostered an CT Page 16028 emotional attachment between the defendant and Levy.
The plaintiff moved out of the marital home on September 1, 1999. Thereafter the parties attended a weekend marriage counseling session and subsequently attended several follow-up counseling sessions. About this time the plaintiff suggested that they get together again and try to make the marriage work, but the defendant refused. Her relationship with Levy continued to grow emotionally deeper and more romantic in nature. They began to go out together in public in October 1999 and in January 2000 Levy took the defendant on a Caribbean Cruise where they became sexually intimate. Since that time, Levy has taken the defendant on numerous trips to such places as Paris, Canada, China and Australia. It is undisputed that the marriage has broken down. Levy has asked the defendant to marry him and she has at least conditionally accepted.
The parties jointly own a house located at 174 Gilead Street, Hebron, Connecticut. Based upon the financial affidavits of the parties, the court finds the current market value of the marital home to be $189,000. The property is encumbered with an outstanding mortgage loan of $137,000.
There is clearly a significant disparity in the current earnings and in the earning capacity of the parties. The plaintiff currently earns approximately $90,000 per year and the defendant currently earns approximately $15,000 per year. The plaintiff's education, employment skills, and employment history makes him much more marketable than the defendant. This is true now and is likely to be true in the foreseeable future.
The plaintiffs acknowledged assets include a $13,000 IRA, $1,500 in bank accounts, and a 1998 Ford Crown Victoria automobile. He has a vested State of Connecticut pension, and an unvested United States Navy pension. No credible evidence was presented from which the court can reasonably ascertain the value of the Navy pension.[1] The plaintiff also has two insurance policies on his life in the amounts of $200,000 and $100,000.
The defendant's acknowledged assets include a 1994 Mercury automobile, a $9,000 IRA, and $2,000 in bank accounts. She does not have an employment pension.
Both parties have submitted proposed orders to the court. The plaintiff states in his proposed orders that he is in agreement with several of the proposed orders submitted by the defendant. Specifically, the parties are in agreement as to the legal custody and primary residence of the children; medical and dental coverage for the children; life insurance CT Page 16029 for the benefit of the children, life insurance to cover the plaintiff's alimony obligations; continuation of the children's life insurance policies; the distribution of their motor vehicles, personal property, and IRA accounts; an educational trust fund for the children; and the distribution of the plaintiff's state employment pension.
The major issues which continue to divide the parties involve the payment of alimony to the defendant, the plaintiff's unvested military pension, state and federal tax exemptions for the children, and the disposition of the marital home.
The court finds that there is no single cause for the demise of this marriage, nor does fault for the breakdown of the marriage rest exclusively with either party. The court also finds that the financial contributions to the family by the plaintiff are well balanced by the defendant's support for her husband's education and career changes, as well as her decision to take on the burden of being a full time mother and homemaker.
After taking into consideration all of the criteria and factors set forth in § 46b-62, § 46b-81, and § 46b-82, and applying the same to the evidence, the court enters the following orders.
A decree is entered dissolving the marriage of the parties on the grounds of an irretrievable breakdown, all the allegations of the complaint having been proven.
1. The parents shall have joint legal custody of the minor children. The primary residence of the children will be with the mother. The father shall have reasonable parenting and visitation rights with the children.
2. The plaintiff is ordered to pay child support for the minor children in an amount of $320 per week. The plaintiff shall continue to pay child support, in compliance with the child support guidelines, until each child reaches the age of nineteen years or graduates from high school, whichever occurs sooner. Said child support shall be paid to the defendant each Friday by check or money order.
3. The parties shall split the state and federal income tax exemptions for the minor children. If and when only one child can be claimed as an exemption, the parties shall alternate claiming the exemption with the plaintiff claiming the child in even numbered years and the defendant claiming him in odd numbered years.
4. The plaintiff shall continue to provide health and dental insurance for the children as available through his employer for so long as he is CT Page 16030 obligated to pay child support for said children. Unreimbursed medical, dental, and other health related expenses for the minor children shall be shared according to the child support guidelines: 60% by the plaintiff and 40% by the defendant, after the first $100 deductible which is to be paid by the defendant. The provisions of Connecticut General Statutes § 46b-84 shall apply. The plaintiff shall also be responsible for 60% of any childcare expenses for the minor children, pursuant to the child support guidelines.
5. In accordance with the agreement of the parties, the parents shall maintain the life insurance policies which they currently have through their employers and the Allamerica Life Insurance policies currently maintained for the benefit of the children. The parties shall name the children as irrevocable beneficiaries of said life insurance policies until the children reach the ages of 19 years or graduate from high school, whichever occurs sooner. The plaintiff shall also obtain and maintain a life insurance policy in an amount sufficient to satisfy his alimony obligation to the defendant for so long as said alimony obligation exists. The defendant is to be named as irrevocable beneficiary of said insurance policy.
6. In accordance with the agreement of the parties, the parents shall maintain the children's life insurance policies during their minority, sharing the expense thereof equally. The plaintiff and the defendant shall both be named as beneficiaries of said life insurance policies until the children reach the age of 19 years or graduate from high school, whichever first occurs.
7. The plaintiff shall transfer one half of the current value of his vested State of Connecticut pension to the defendant by way of a Qualified Domestic Relations Order or other acceptable instrument requested by the State of Connecticut. The wife's interest shall not terminate as a result of the plaintiffs death and shall be protected accordingly as a survivor in the QDRO. This court shall retain jurisdiction until this has been accomplished.
8. Each party shall be solely responsible for the debts listed on his or her financial affidavit dated November 5, 2001, and shall hold the other harmless thereon.
9. The defendant shall retain her interest in the 1994 Mercury Sable automobile and she shall save and hold the plaintiff harmless thereon.
10. The defendant shall transfer her interest in the 1998 Ford Crown Victoria to the plaintiff and he shall pay all loans thereon and save and hold the defendant harmless. CT Page 16031
11. In accordance with the agreement of the parties, the plaintiff shall continue to maintain the children's college education trust account. As trustee, he shall use said funds only to pay their tuition so long as they complete their bachelors degree or vocational training within five years of graduating from high school. Any balance in said account shall be paid to the children when the youngest child reaches the age of 23 years of age.
12. The plaintiff shall retain sole interest in his American Skandina IRA and the cash value of his Allamerica Life Insurance Policy. The defendant shall retain sole interest in her American Skandina IRA.
13. The defendant consistently supported her husband's educational and career goals throughout the marriage. She also devoted much of her time and effort over the years in caring for their children as well as working in and maintaining the family home for the family. Her contribution to her husband's financial success and to the welfare of the family during the twenty-two years of marriage are as significant and important to the accumulation of marital assets and the welfare of the family as are the contributions of the plaintiff.
The defendant is 48 years old, and while she has a college degree, and some outdated graduate school credits, her work experience is very limited. She will need substantial training and perhaps additional education if she is to rehabilitate herself and develop sufficient marketable skills to permit her to enter a competitive workforce and earn a salary sufficient to make her independent. She will have to do this while continuing to raise two children through their adolescent years. All of this will take time and effort, and will require financial support, which the plaintiff is financially capable of providing. It is the intention of the court to provide the defendant with an award of rehabilitative periodic alimony which will decrease as she develops the knowledge, employment skills, and employment experience that she will need to become self sufficient and thus decrease her need for support.
Accordingly, the plaintiff is ordered to pay periodic alimony to the defendant for ten (10) years in the amount of $250 per week for the first four years, $175 per week for the next four years, and $100 per week for the final two years. Said alimony shall be paid to the defendant each Friday by check or money order. The alimony is nonmodifiable as to term and amount, except that the alimony shall earlier terminate upon the death of either party, the marriage of the defendant, or the cohabitation of the defendant with an unrelated male. No alimony is awarded to the plaintiff. CT Page 16032
14. As part of the overall equitable distribution of the marital property relating to this dissolution, the plaintiff shall Quit Claim to the defendant his interest in the marital residence at 174 Gilead Street, Hebron, Connecticut within 30 days of the date of judgement of dissolution. At the same time, the defendant shall give to the plaintiff an interest free Promissory Note and Mortgage on the property in the principal amount of $30,000. The defendant shall thereafter be solely responsible for all obligations relating to the property, including but not limited to the mortgage and taxes, and she shall hold the plaintiff harmless for the same. Said note shall become due and payable upon any of the following events, whichever shall first occur:
A. The sale or transfer of the residence.
B. The remarriage of the defendant.
C. The death of either party.
D. The failure of the defendant to use the marital home as her principal residence.
E. Ten (10) years from the date of judgement of dissolution.
15. As part of the overall equitable distribution of the marital property relating to this dissolution, the husband shall retain whatever pension interests he may acquire as a result of his military service, free from any claim of the defendant.
16. The parties shall be responsible for obtaining and paying for their own health insurance coverage. However, if health insurance is not available through her employer, the plaintiff, if requested to do so by the defendant, shall make arrangements with his employer for the defendant to apply for health insurance through COBRA. The defendant shall be solely responsible for the payment of this insurance coverage.
17. Each party shall be responsible for paying his/her own attorney's fees.
 Terence A. Sullivan Superior Court Judge